IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
UNITED STATES OF AMERICA : CASE NO. 5: 07 CR 00563
:
Plaintiff :
: MEMORANDUM OF OPINION AND
-vs- : ORDER DENYING DEFENDANT'S
: SUPPRESSION MOTION
:
ERVIN THOMAS, et al., :
:
Defendants :
------------------------------------------------------ :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On 7 November 2007, the government unsealed a nineteen count Indictment against thirteen defendants, accused of possessing and conspiring to possess and distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846, as well as 18 U.S.C. §§ 1952, 1956, & 2. (Docket No. 1). Defendant Ervin Thomas ("Mr. Thomas") now seeks suppression of conversations intercepted pursuant to Title III wiretap orders on five separate occasions: 30 May, 29 June, 20 July, 31 July, and 30 August 2007. (Doc. 223). Specifically relying upon 18 U.S.C. § 2515, Mr. Thomas maintains the government failed to establish "probable cause" for the interceptions, failed to show the "necessity" for the interceptions, did not comply with reporting requirements, and may not have complied with the sealing requirements of 18 U.S.C. 2518(8)(a).

In response, the government contends the Title III application supported "probable cause" that the persons targeted were engaged in criminal activity, and contends "necessity" was established in DEA Special Agent Daniel Wehrmeyer's ("Agent Wehrmeyer") affidavit before Federal District Judge Sara Lioi, providing a substantial basis to conclude that the interception of wire communications was the only technique reasonably likely to reach the objectives of the investigation.  (Doc. 249).

In denying Mr. Thomas' suppression motion, for the reasons discussed below, the Court will not consider the defendant's allegations regarding Title III reporting and sealing requirements.  Mr. Thomas' supporting memorandum addresses only the "probable cause" and "necessity" claims in objecting to the government interception of wire communications.[1]

I.    **Background**

In this instance, through the affidavit application of Agent Wehrmeyer, the government sought and received authority to intercept conversations over certain telephones for 30 May, 29 June, 20 July, 31 July and 30 August 2007.  As a result of

---

[1]The Court notes that even had Mr. Thomas addressed the reporting and sealing requirements of Title III authorization orders the law and evidence before the Court indicate the government has faithfully complied with each of these procedural duties.  First, the government's reporting before Judge Lioi was consistent and regular and comported with the law.  See United States v. Breland, 356 F.3d 787, 793 (7th Cir. 2004) (identifying 15-day progress reports as discretionary as aids to the issuing court).  Second, the record indicates the government sealed the intercepted communications immediately, pursuant to the requirement of 18 U.S.C. § 2518(8)(a).  (Doc. 249, Exs. A, B, C, D, E).  See United States v. Ojeda Rios, 495 U.S. 257, 263 (1990) (finding that communications not sealed in a timely manner and lacking any satisfactory explanation for delay provide possible grounds for suppression)

these wiretaps, permitted upon affidavit review by Judge Lioi, the government gathered numerous recordings of defendant Terrance Thomas in conversation with government witness CS-13. Defendant Ervin Thomas seeks the suppression of these conversations and any investigatory "fruit" obtained as a result of the court authorized Title III wiretaps.[2] Mr. Thomas contends the government did not provide the reviewing court with "probable cause" for the interception nor did the government establish the "necessity," outside of traditional investigatory techniques, for the Title III wiretaps. Mr. Thomas' motion is only directed at material in the initial affidavit, claiming that if the initial wiretap authorization is invalid then all subsequent applications are tainted by illegally intercepted telephone calls.

Prior to the initial Title III wiretap application, and as represented to the issuing judge, the government contends that from the period of May 2006 until May 2007, witness CS-13 made recordings of telephonic and personal conversations with Terrance Thomas which involved drug related activity including conversations in connection with eight controlled purchases of cocaine from Terrance Thomas by CS-13. (Doc. 249, Ex. 1, Agent Wehrmeyer Aff. ¶¶ 65-105, hereinafter "Aff."). Predicated on the limitations of its past investigatory techniques, the government sought permission for Title III wiretaps to enable the identification and location of alleged co-conspirators in this Akron, Ohio

---

[2]Defendant Ervin Thomas has standing to bring this suppression motion under 18 U.S.C. § 2518(10)(a) (noting that only an "aggrieved person" may move to suppress illegally intercepted communication). Pursuant to 18 U.S.C. § 2510(11) an "aggrieved person" means a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed. The government specifically notes the interception was directed at uncovering alleged improper activities carried out by the "THOMAS FAMILY" or "THOMAS CLAN". (Aff. ¶ 8).

based cocaine distribution organization.

Agent Wehrmeyer's affidavit advised the reviewing court that from the mid 1990's, federal, state, and local law enforcement officers sought to contain and dismantle a drug trafficking organization allegedly directed by Mr. Thomas and comprised principally of Mr. Thomas' extended family members.  According to the affidavit testimony, the investigation had uncovered two telephones that defendant Terrance Thomas utilized to facilitate cocaine transactions in the Akron, Ohio area and beyond, on behalf of his brother defendant Ervin Thomas and other family members.  In setting out the justification for the initial Title III interception, Agent Wehrmeyer's affidavit represented the

> overall objective of the requested court authorization to intercept wire communications is to discover al the communications facilities used by the THOMAS Family and their associates, to identify the sources of cocaine supply, to uncover the modus operandi of the operation, and to gain evidence to prove the connection, participation, and role of all co-conspirators – in a concerted effort to disrupt and/or dismantle the organization.

(Aff. ¶ 8).

**II.    Law and Argument**

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522, sets forth specific procedural requirements that must be followed before the government will be allowed to intercept the private conversations of citizens.  As a prerequisite to surveillance, the government must submit a properly authorized application and obtain an approval order from a judge of competent jurisdiction. 18 U.S.C. § 2516.  The Act not only delineates the substantive provisions that must be

4

included in both the surveillance application and authorizing order, but also proscribes the offenses covered under the Act, requires specific findings of fact on the part of the issuing judge with regard to "probable cause," and places temporal limitations on the validity of the order. 18 U.S.C. § 2518. "The Supreme Court has explained that this system evinces Congress's 'clear intent to make doubly sure that the statutory authority be used with restraint and only where circumstances warrant the surreptitious interception of wire and oral communications.' " United States v. Staffeldt, 451 F.3d 578, 580 (9th Cir. 2006) (quoting United States v. Giordano, 416 U.S. 505, 515 (1974)).

Title III provides for the suppression of all or part of the contents of intercepted wire or oral communications "if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515 . "Any aggrieved person in any trial, hearing, or proceeding in or before any court" may move to suppress intercepted communications on three grounds: "(i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was interpreted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval." 18 U.S.C. § 2518(10)(a)(i-iii).

"The words 'unlawfully intercepted' [contained in paragraph (i)] are themselves not limited to constitutional violations," but may include statutory infringements. Giordano, 416 U.S. at 527, 94 S.Ct. 1820. However, the United States Supreme Court "did not go so far as to suggest that every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communications 'unlawful.' " United States v. Chavez, 416 U.S. 562, 574-75 (1974). "To the contrary, suppression is required [under paragraph (i) ] only for a 'failure to satisfy any of those

5

statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.' "  United States v. Donovan, 429 U.S. 413, 433-34 (1977) (quoting Giordano, 416 U.S. at 527, 94 S.Ct. 1820).

Courts have recognized, due in part to the rigorous application process, that "a wiretap authorization is presumed proper, and a defendant carries the burden of overcoming this presumption."  United States v. Castillo-Garcia, 117 F.3d 1179, 1186 (10th Cir. 1997);  United States v. Giacalone, 853 F.2d 470, 482 (6th Cir. 1988).

### A. "Probable Cause" is Sufficient

In any instance in which the government seeks to pursue electronic surveillance under Title III, the issuing judge must find evidence of "probable cause" to believe that incriminating communications will be intercepted.  United States v. Giacalone, 853 F.2d at 478.  In the arena of electronic surveillance the standard for probable cause is the same as that for the issuance of a regular search warrant.  Courts judge the evidence on the totality of the circumstances in a "reasonable and common sense manner," finding "probable cause" where "a fair probability" exists that the interception would reveal evidence of a crime and the record provides "a substantial basis" for the probable cause finding.  United States v. Alfano, 838 F.2d 158, 161-63 (6th Cir.) cert denied, 488 U.S. 910 (1988); United States v. Lambert, 771 F.2d 83, 93 (6th Cir.) cert denied, 474 U.S. 1034 (1985).  The Court accords "great deference" to the issuing judge's determination of "probable cause" because "[r]easonable minds frequently may differ on the question whether a particular affidavit established probable cause." United States v.

6

Giacalone, 853 F.2d at 479 (6th Cir.1988); Alfano, 838 F.2d at 162.

In this instance, Mr. Thomas does not challenge the position that Judge Lioi had a substantial basis to find "probable cause" in her review of the affidavit before the Court. Rather than challenge the facial sufficiency of the affidavit Mr. Thomas seeks, instead, to reach beyond the affidavit itself to imply that the consent of the cooperating witness, known only as CS-13, was not voluntary. Franks v. Delaware, 338 U.S. 154 (1978). Mr. Thomas' reliance upon United States v. Kelly, 708 F.2d 121, 125 (3rd Cir. 1983) for this proposition is inapposite as Kelly did not involve a court authorized wiretap and, unlike the instant matter, involved personal privacy rights.

Further, Mr. Thomas' mere allegation that consent by CS-13 was absent fails to meet the necessary threshold standard of proof for claiming lack of "probable cause." That standard was established in Franks v. Delaware, in which the Court found the necessity for an evidentiary hearing, pursuant to the Fourth Amendment, where the defendant made a substantial preliminary showing that a false statement material to the finding of "probable cause," knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in a search warrant affidavit. To mandate an evidentiary hearing the Franks Court noted,

> the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

> Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

Franks, 438 U.S. at 171-72.

Mr. Thomas simply does not meet this threshold of proof, arguing only that the government must prove that CS-13 consented to the recording of his telephonic and in-person conversations. Absent are allegations of reckless disregard, or specific examination of supporting affidavits, or offers of proof.

Instead, the record indicates Agent Wehrmeyer's affidavit included representations of: controlled narcotics purchases involving CS-13 while the informant was wearing an electronic transmitter (Aff. ¶ 14); longstanding high-value cooperation between CS-13 and the DEA in which CS-13 received monetary compensation for provided information[3] (Aff. ¶ 29); and, CS-13's consensually recorded telephone conversations with Terrance Thomas between May 2006 and May 2007, as part of controlled drug purchases or intelligence gathering regarding the activities of Terrance Thomas and others (Aff. ¶ 65-105).

Accordingly, Mr. Thomas assertion, without more, that Agent Wehrmeyer's affidavit lacks "probable cause" is without merit. The Court will deny the defendant's

---

[3]The Court notes that an informant's consent is not rendered involuntary where the government extends benefits in exchange for cooperation. See United States v. Frank, 511 F.2d 25, 31 (6th Cir. 1975) (benefits received by an informant for cooperating with government investigations did not vitiate informant's voluntary consent to the electronic recording of his conversations). Further, other Courts have recognized an extraordinarily low threshold for finding consent in such circumstances. See United States v. Gomez, 900 F.2d 43, 44 (5th Cir. 1990) (recognizing that "[c]onsent to interception of a telephone call may be inferred from knowledge that the call is being monitored.").

suppression motion and request for an evidentiary hearing on the matter.

### B. The Affidavit Established the Required "Necessity"

Title III requires the government's interception application include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). In showing the "necessity" of electronic surveillance, the Government need not prove that it has exhausted every conceivable investigative method. See Alfano, 838 F.2d at 163. The purpose of the "necessity" requirement "is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." United States v. Stewart, 306 F.3d 295, 304 (6th Cir. 2002); see also United States v. Corrado, 227 F.3d 528, 539 (6th Cir. 2000). The issuing judge has "considerable discretion" in deciding whether other investigative methods might be successfully employed. United States v. Landmesser, 553 F.2d 17, 20 (6th Cir. 1977).

In this instance, Mr. Thomas' argument – that the government's use of traditional techniques had resulted in "substantial progress" – is insufficient to disturb the issuing judge's finding that the application displayed the "necessity" of electronic surveillance pursuant to Section 2518(1)(c). See Stewart, 306 F.3d 305 (recognizing the necessity of wiretaps to uncover the full scope of the conspiracy where evidence reflected various members of the drug conspiracy facilitated the criminal enterprise through multiple telephone conversations from several locations).

The record indicates that Agent Wehrmeyer's affidavit before the reviewing judge acknowledged the use of traditional investigative techniques in conjunction with other methods, but discussed the "necessity" for electronic surveillance as the only technique reasonably likely to enable the gathering of sufficient evidence to prosecute and convict the principal participants of the cocaine trafficking enterprise allegedly conducted over the last decade by Ervin Thomas along with his extended family members. (Aff. ¶ 8). For instance, traditional techniques had yielded a number of cooperating sources but much of the information, as acknowledged by Mr. Thomas, was "irrelevant historical drug related information." (Doc. 223). The use of CS-13 provided an operational contact with Terrance Thomas which might further enable Agent Wehrmeyer to identify individuals participating in the telephonic conversations, the subject matter of the communication, and the originating telephone number. (Aff. ¶¶ 118-145). The government's extensive, affidavit review of its use of traditional investigative techniques and the "necessity" for more involved electronic surveillance concludes with Agent Wehrmeyer's observation that,

> based upon the totality of facts and circumstances set forth herein, and [affiant's] training and experience, [ ] wire interception is the only investigative technique that will reasonably lead to the positive identification of the sources of supply, local dealers, and locations where drugs and drug proceeds are concealed by members of this organization, and which will lead to evidence sufficient to prove that the named target violators and their unknown associates are engaging in drug distribution in Akron, Ohio, and elsewhere.

(Aff. ¶ 145).

As the Court notes, Mr. Thomas must carry the burden of surmounting the presumption of validity that attaches to the issuing judge's finding on "necessity".  See Landmesser, 553 F.2d at 20.  Upon review of the record, the Court finds Mr. Thomas has not met that burden.

**Conclusion**

For the reasons discussed above, this Court denies Ervin Thomas' motion to suppress the conversations intercepted pursuant to the Title III wiretap orders of 30 May, 29 June, 20 July, 31 July, and 30 August 2007.  The Court further denies Mr. Thomas' motion to suppress any and all evidence derived from those conversations.

IT IS SO ORDERED.

          /s/Lesley Wells
    UNITED STATES DISTRICT JUDGE

Dated: <u>12 November 2008</u>